## Olaf Egeland et al., Appellees, v. Christian Scheffler and Louise Scheffler, Appellants.

### Gen. No. 19,925.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed November 10, 1914.

### Statement of the Case.

Olaf Egeland complainant, filed a bill in equity to foreclose a trust deed given to secure a note of which he was the holder, against Christian Scheffler and Louise Scheffler, Gustaf Gustaffson, as trustee and A. V. Rakowski, as successor in trust. The bill was subsequently dismissed as to the trustee and successor in trust, and they were made additional parties complainant to the bill. Christian Scheffler and Louise Scheffler filed a cross-bill.

The following statement of facts is adopted from the statement of the case by the court:

The defendants, Christian Scheffler and Louise Scheffler, wife of Christian, owned a farm in the State of Michigan. Being desirous of exchanging this farm, which was unincumbered, for Chicago property, they acquainted Gustaf Gustaffson of Chicago of their desire by letter. Thereafter Gustaffson met A. V. Rakowski, also of Chicago. Rakowski said he knew of a certain party, Martin Janca, who might exchange his Chicago property for the farm but that he would have to make a trip to Michigan and examine the farm. It was thereupon agreed between Rakowski and Gustaffson that they would both go to Michigan and see the Schefflers and examine the farm, that Rakowski would act as broker for Janca and Gustaffson as broker for the Schefflers, and that if an exchange of

the properties was consummated they would divide equally all commissions received from their respective clients. At their interview with the Schefflers in Michigan it was agreed that Johanna Scheffler, a daughter of the Schefflers, should go to Chicago and examine for them the Janca property, that the farm should be valued at $4500, that if the exchange was made Gustaffson was to get a commission of five per cent. on that amount, or $225, but that, as the Schefflers did not have much ready money, they would pay $50 in cash and the balance, $175, in monthly instalments of $25 until paid. Shortly after this interview, about March 23, 1912, Johanna Scheffler went to Chicago, viewed the Janca property, and employed an attorney, named Krumseig, to examine the title and represent the Schefflers in the transaction. It was found that the Janca property was incumbered by two trust deeds, one in favor of a certain building association and the other in favor of another party for the sum of $600. Johanna Scheffler testified that Rakowski represented to her that the amount of the two incumbrances was about $2,000. Rakowski denied making such a representation to her or to the Schefflers, and testified that he did not know the exact amount of the debt due to the building association and that he told Miss Scheffler to obtain a statement thereof from said association. It appears that she went several times to the office of the association for such statement, but, as she did not have a certain book, it was refused her. Whether afterwards, and before the consummation of the exchange of properties, she was advised of the amount due said association does not appear, but it does appear that at the time the deeds were passed, the attorney, Krumseig, had in his possession a book of said association regarding said indebtedness. The deeds were passed in the office of Mr. Mack, attorney for Janca, in Chicago, about April 29, 1912. The Schefflers paid Janca $100 and delivered to him their

warranty deed conveying the Michigan farm, and
Janca and wife delivered to the Schefflers their war-
ranty deed of the Chicago property in question. It
was stated in the latter deed that said conveyance was
made "subject to an incumbrance secured by trust
deed recorded    *    *    *    as doc. No. 4330742" (the
amount of the incumbrance was not stated), and "also
subject to an incumbrance of $600 secured by trust
deed recorded    *    *    *    as doc. No. 4343953." Chris-
tian and Louise Scheffler also paid Rakowski the sum
of $50, commissions on account, and they signed a
judgment note payable to the order of "A. V. Rakow-
ski and Gustaf Gustaffson" for the sum of $175, pay-
able $25 on the first day of June, 1912, and $25 on the
first day of each month thereafter, with interest at six
per cent. per annum, payable monthly on the whole
amount of said principal sum remaining from time to
time unpaid. The note provided that if any instal-
ment, either of principal or interest, should remain
unpaid for thirty days after due, the principal sum or
any unpaid balance thereof should, at the option of the
legal holder, become immediately due and payable.
It was stated in the note that the same was secured by
trust deed on real estate in Cook county, Gustaf Gus-
taffson, trustee. On the same day the Schefflers exe-
cuted and delivered their trust deed on the property
in question to said trustee securing said note.
Rakowski was named therein as successor in trust.
The trust deed contained the usual covenants and pro-
vided for the recovery of a reasonable solicitor's fee
in case of foreclosure proceedings. The said judg-
ment note, as introduced in evidence, bore the follow-
ing indorsement: "Chicago, May 29, 1912. For one
dollar and other good and valuable considerations, the
receipt of which we hereby acknowledge, we transfer,
assign and set over the within note to Olaf Egeland,
and guarantee the payment of same. (Signed) A. V.
Rakowski. Gustaf Gustaffson." Neither the instal-

ment of $25, due June 1, 1912, nor that due July 1, 1912, having been paid, Egeland elected to declare the entire principal sum due and payable and, on July 8, 1912, filed his bill to foreclose said trust deed, in the usual form, making Christian and Louise Scheffler, Gustaffson, as trustee, and Rakowski, as successor in trust, parties defendant.

The court sustained the amended bill and dismissed the cross-bill of defendants Christian Scheffler and Louise Scheffler, for want of equity, and adjudged that unless said defendants pay to Olaf Egeland within two days the sum of $282.83, with interest from February 3, 1913, together with a solicitor's fee of $100 and costs of suit, and the master's fees taxed at $75, the premises in question should be sold. From this decree in favor of the complainant, defendants appeal.

ALPHONSE LEFKOW, for appellants.

LEVISOHN & LEVISOHN, for appellees.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

## Abstract of the Decision.

1. FRAUD, § 115*—*where evidence is insufficient to establish.* The evidence is *held* to fail to establish false representations alleged to have been made by a broker as to the amount an incumbrance on certain property such as to defeat foreclosure of a mortgage executed to secure a note given in payment of commissions.

2. BROKERS, § 91*—*what constitutes fraud on the part of a broker.* Where it is not shown that a broker knew that his representations were false as to the amount of a trust deed or that the purchasers and makers of a note relied upon them, recovery cannot be defeated in the foreclosure of a trust deed to secure a note given as the broker's commission.

3. APPEAL AND ERROR, § 973*—*what essential to preserve ordinance for review.* In order to make available on appeal a city ordinance, making it unlawful for a person to act in the capacity of a broker in

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

430    APPELLATE COURTS OF ILLINOIS.

the city without a license, it should be introduced in evidence, as the Appellate Court will not take judicial notice of city ordinances.

4. BROKERS, § 12*—*when contracts of unlicensed brokers not invalid.* Where a contract for the payment of a commission for the exchange of real estate is made in another State (Michigan), a city ordinance making it unlawful for a person to act in the capacity of a broker in a city within the State (Illinois) has no application such as to render the contract invalid.

5. BILLS AND NOTES, § 240*—*what constitutes a bona fide purchaser.* In a suit to foreclose a trust deed executed to secure a note given in payment for procuring the exchange of real estate, the evidence is *held* to show that complainant took the note, after inquiry, without notice of any defenses.

6. BROKERS, § 62*—*when agreement to divide commissions not invalid.* In a suit to foreclose a trust deed executed to secure a note given in payment of the brokers' commissions, the evidence is *held* to show that the makers knew of the agreement between the brokers to pool or divide commissions received from their respective customers.