The First National Bank of Millstadt, Plaintiff, v. L. J. Freant et al., Art Fauss, Inc., Defendants.
Art Fauss, Inc., Counterclaimant-Appellant, v. L. J. Freant and Rosemary Freant, Counterdefendants-Appellees.

Term No. 55-M-5.

Fourth District.

October 3, 1955.

Released for publication October 24, 1955.

Wilmer L. Vogt, of Belleville, for counterclaimant-appellant.

Thomas P. O'Donnell, of East St. Louis, for counter-defendants-appellees.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

This suit involves a claim for a real estate broker's commission, by an East St. Louis brokerage firm, defended by the sellers on the ground the property involved is located in the City of Belleville, where the broker had no city license as such. It is contended the lack of such license makes the contract between broker and seller void.

The suit was commenced by interpleader, with the amount in dispute deposited in court. The interpleaded parties are the claimant, Art Fauss, Inc., hereafter called plaintiff, and L. J. Freant and wife, hereafter called defendants. The facts were stipulated, and judgment was entered for defendants, from which this appeal was taken.

By stipulation of the parties, as well as by the pleadings below and the argument here, the only issue is the effect of the Belleville ordinance, therefore no other question is considered by this court. It is conceded that the plaintiff has fully complied with laws of the State of Illinois pertaining to registry of brokers and salesmen, and is licensed in East St. Louis, where it has offices and conducts its business, and where the contract is dated. Plaintiff had not procured a Belleville license, under the following ordinance:

"Section 92. Every person carrying on the business of broker of real estate, loan broker or bond broker in this City shall pay a license fee of Thirty Dollars ($30.00) per year.

"Section 93. A broker of real estate is one who for commission or other compensation is engaged in the selling of or negotiating sales of real estate belonging to others, or obtains or places loan for others on real estate.

"Section 94. Any person violating any of the provisions of this Ordinance by failing to take out a license as provided shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than three dollars ($3.00) and not more than Two Hundred Dollars ($200.00)."

Four features of this ordinance are involved in the argument: 1. It makes no reference to location of property but only to *business* carried on "in this city." 2. It does not purport to apply to an isolated single transaction, but only to "carrying on the business" and to negotiating "sales." 3. It specifies no qualifications for a broker, nor any regulations of the business, purporting to be only a revenue measure. 4. It does not prohibit the business in any way, nor provide any penalty other than a fine not exceeding $200.

The questions involved are not new, but there are few reported decisions in this state thereon, and those

from other states present some apparent conflict. Some cases hold that a penalty law or ordinance does not make a contract in violation thereof actually void, unless expressly so declared. Others find occasion to imply such a result from the purpose or apparent legislative intent.

Defendants rely upon cases from the City of Chicago, such as Whitfield v. Huling, 50 Ill. App. 179; Hustis v. Pickands, 27 Ill. App. 270; Douthart v. Congdon, 197 Ill. 349. From these decisions, it appears that the Chicago ordinance expressly declares it unlawful and prohibited to transact a brokerage business without a city license. The Belleville ordinance contains no such provision. Moreover these cases appear to be based more upon transaction of business in Chicago, rather than the location of the property.

An opposite result is usually found in cases based on the location of property. Thus, where a Wisconsin broker, acting in that state, negotiated an exchange involving a property in Chicago, his lack of a Chicago license was held no defense to his claim for commission. Cervenka v. Hunter, 185 Ill. App. 547 (Abst.). Likewise, a contract made in Michigan between a broker and seller is not invalidated by a city ordinance in Illinois. Egeland v. Scheffler, 189 Ill. App. 426 (Abst.). And in O'Dea v. Throm, 250 Ill. App. 577, the court said:

"The fact that a party, residing in Illinois, requests a real estate broker, also residing in Illinois, and the request being made in Illinois, to procure a purchaser of real estate in a foreign state, does not stamp such a contract as one having been made where the property to be sold is located."

Similar results have been reached in other states, for example, Ressler v. Marks, 308 Pa. 205, 162 Atl. 666; Aronson v. Carobine, 129 Misc. 800, 222 N. Y. Supp. 721; and see note in 169 A. L. R. 769.

While these cases may involve different states rather than different cities in the same state, the principle is the same. These license laws are not, and do not purport to be, a method of taxing real estate transfers; rather, by their express terms, they impose the license on the occupation, where the transaction occurs.

Of course, it is conceivable that a broker licensed in one city, might have a series of sales of property in another locality, so that a court would regard him as one carrying on a business in the latter. For this reason, the foreign cases above cited, and others in the cited annotation, are careful to mention that the suit involved only an isolated transaction. From this, it has been stated as a general rule that an isolated local sale by a foreign broker is not subject to a local license law. 8 Am. Jur. "Brokers," Sec. 156.

■ From the foregoing, we are of the opinion that ordinances for broker licenses apply to the occupation where it is carried on, rather than where the property is situated, with the possible exception of a series of transactions in one locality.

■ We further agree with appellant that an ordinance prescribing a penalty by fine, does not usually invalidate a contract. The modern trend of authority appears to limit the penalty under any act to that prescribed by the act itself. Thus, in Grody v. Scalone, 408 Ill. 61 (contra to Mickelson v. Kolb, 337 Ill. App. 493) the court held that the law requiring registry of a fictitious name, did not render void a contract made under such an unregistered name, but only the prescribed penalty would be enforced. This law was contrasted with the Illinois Real Estate Brokers & Salesmen Act, which prohibits recovery of a commission by one not registered under the state law. Ill. Rev. St., Chap. 114½, Sec. 2b [Jones Ill. Stats. Ann. 115.02(2)].

There is no reason to depart from that principle in the instant case. In fact, the requirement that a ficti-

208

tious name be registered may have some notion of protecting the public, and, if the prescribed fine is the only penalty in that case, surely a mere license requirement, not purporting to do anything but secure revenue, should have no worse effect. Quite a few cases on this subject bottom the result solely on that principle: that a license for revenue, as distinguished from a regulatory law, makes a violator subject to the prescribed fine, but does not impose the much heavier penalty of invalidating a contract. See Annotations: 16 L. R. A. 423; 1 L. R. A. (N. S.) 1159; 12 L. R. A. (N. S.) 613; Ann. Cas. 1912 D 378.

It must be concluded that the ordinance of the City of Belleville was not a defense to plaintiff's claim, and plaintiff is entitled to judgment under the stipulation. Accordingly the judgment of the Circuit Court is reversed and the cause remanded with directions to enter judgment for Art Fauss, Inc., for the balance of the deposited fund, less the deductions prescribed in the stipulation, consisting of costs in the lower court and the escrow fee.

Reversed and remanded.

BARDENS, P. J. and CULBERTSON, J., concur.