570 P.2d 209

**Gilbert E. OLSON and Hedwig Olson, his wife, Appellants,**

v.

**William G. NEALE and Martha H. Neale, husband and wife, dba Neale & Associates, Appellees.**

**No. 1 CA–CIV 3193.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 30, 1977.

Rehearing Denied Sept. 28, 1977.

Review Denied Oct. 18, 1977.

Mariscal, Weeks, McIntyre & Friedlander, P. A. by Phillip Weeks, Phoenix, for appellants.

Bellamak & Mitchell by Ferris W. Bellamak, Scottsdale, for appellees.

## OPINION

EUBANK, Judge.

■ This is an action for broker's commission arising from the sale of real property. The principal question raised by the parties on appeal is whether an extant broker's listing agreement is a condition precedent to recovery of a sales commission. We hold that a valid agreement must be in force.

The facts of this case are as follows: On March 6, 1965, Gilbert and Hedwig Olson,

gave to William G. Neale and Martha H. Neale, d/b/a Neale & Associates (hereinafter "Neale") a written non-exclusive listing to sell the Olson ranch. The listing provided for a "broker's commission," "fixed at five percent (5%) of the purchase price, to be paid as the land is released and paid for." By its terms the listing expired July 15, 1965. On three separate occasions the listing agreement was extended, as follows:

Listing Contract

| Commencement Date | Termination Date |
| --- | --- |
| 3–6–65 | 7–15–65 |
| 7–27–65 | 1–1–66 |
| 12–29–66 | 5–31–67 |
| 5–31–67 | 11–1–67 |

A sale was ultimately consummated in September, 1969, to Recreation Leisure Land through an agent, A. A. McCollum, who had first seen the property through Neale during the summer of 1967. McCollum, however, was an officer (and agent) of an entirely different corporation in 1969 than in 1967, as he was representing Development Services, Inc. in 1967 and Recreation Leisure Land in 1969.

Appellees assert that the Olsons waived any requirement of a listing contract by continuing to meet with Neale and McCollum on four separate occasions in 1968 for the purpose of furthering the ultimate sale. We refuse to accept the doctrine of implied waiver.

■ Arizona has a Statute of Frauds requirement for brokerage contracts which has been strictly enforced. A.R.S. § 44–101.7 states:

No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \* °

7. Upon an agreement authorizing or employing an agent or broker to purchase

or sell real property, or mines, for compensation or a commission.

Cases interpreting that statute have said that neither partial nor complete performance will take an oral contract between broker and seller out of the Statute of Frauds, *Gibson v. W.D. Parker Trust*, 22 Ariz.App. 342, 527 P.2d 301 (1974); a real estate broker is presumed to know that an oral contract of employment for rendition of services in negotiating a sale of real estate for compensation or a commission is invalid, *Gray v. Kohlhase*, 18 Ariz.App. 368, 502 P.2d 169 (1972); and that Arizona does not recognize the applicability of the doctrine of estoppel to real estate listing agreements, *see Gibson v. W. D. Parker Trust, supra.* While these cases do not pertain to the specific question at hand, they are indicative of the strict requirements placed upon Arizona real estate brokers who seek their commissions.

The listing contract terminating on November 1, 1967, involved in this case, is set forth in the Appendix attached hereto. The contract does not purport to grant commissions to the broker following termination of the contract and is therefore distinguishable from the contracts in *Hyde Park-Lake Park, Inc. v. Tucson Realty & Trust Co.*, 18 Ariz.App. 140, 500 P.2d 1128 (1972) and *Limberopoulos v. Tom Fannin and Associates*, 17 Ariz.App. 35, 495 P.2d 475 (1972) both of which provided that in the event a sale was made within 90 days after expiration of an exclusive agreement to a party whose name had been submitted to the vendor in writing during the term of the listing agreement, the commission would be earned.

This situation *sub judice* is also distinguishable from the situation in *Mohamed v. Robbins*, 23 Ariz.App. 195, 531 P.2d 928 (1975). In *Mohamed* the real estate contract contained a protective clause, under which the defendant agreed to pay a commission if the property was sold to any person with whom the plaintiff was negotiating or dealing upon expiration of the listing. No time period was specified as to the duration of the clause and it was held that

a period in excess of one year was not so unreasonable as to preclude recovery. The court found that the broker was the "procuring cause" of the sale and therefore was entitled to the commission. Here, however, there is no purported agreement giving the broker a commission after termination of the listing contract and so the question of whether the broker was the "procuring cause" is irrelevant.

This case is also distinguishable from other cases which have held the vendor liable for the commission upon finding that the broker was the "procuring cause" of the sale. In those cases the vendor had either deliberately bypassed the broker, e. g., *Bowser v. Sandige*, 74 Ariz. 397, 250 P.2d 589 (1952), *Fornara v. Wolpe*, 26 Ariz. 383, 226 P. 203 (1924); or the action involved a contest between two brokers for the right to a commission, e. g., *Garver v. Thoman*, 15 Ariz. 38, 135 P. 724 (1913), *Leadville Mining Co. v. Hemphill*, 17 Ariz. 146, 149 P. 384 (1915), *Fink v. Williamson*, 62 Ariz. 379, 158 P.2d 159 (1945), *Porter v. Ploughe*, 77 Ariz. 33, 266 P.2d 749 (1954). *See also Hearrold v. Gries and Realty Executives*, 115 Ariz. 560, 566 P.2d 1036 (filed July 7, 1977).

Moreover, even though McCollum was the acting purchaser's agent for both the ultimate purchaser and the original prospective party, we feel that appellees cannot be considered the procuring cause when the ultimate purchaser of the property was a different entity from the original prospective party.

The sole question then, is whether the owner of the property waived his right to rely on the expiration date of the listing agreement, or stated another, way, whether an extant contract is a condition precedent to receipt of the broker's commission. While many other states have adopted the principle of waiver by conduct (see 27 A.L. R.2d 1348), we refuse to do so. We feel that the policy of this state with respect to real estate brokers was properly stated in *Gray v. Kohlhase, supra* :

Although denial of a commission to a broker who has procured a purchaser of property and has expended time and ef-

fort on behalf of the seller may seem harsh, we believe the answer to real estate brokers and agents is found in the following statement in *Pac. Southwest Dev. Corp. v. Western Pac. R.R. Co.*, 47 Cal.2d 62, 301 P.2d 825 (1956):

> "Plaintiff is a licensed real estate broker and, as such, is presumed to know that contracts for real estate commissions are invalid and unenforceable unless put in writing and subscribed by the person to be charged.
>
> \* \* \* \* \* \*
>
> Nevertheless, plaintiff failed to secure proper written authorization to protect itself in the transaction. Rather it assumed the risk of relying upon claimed oral promises of defendant, and it has no cause for complaint if its efforts go unrewarded." [citations omitted] 301 P.2d at 831.[1]

This position is further supported by the rules of the Real Estate Commission which, in part, read:

R4–28–15. Documents

A. All real estate listings shall be in writing. A listing agreement is a contract for the personal services of the licensee. Such agreement may not be assigned to another licensed entity without the express written consent of the client.

B. A broker or salesman shall deliver a duplicate of the original of any instrument to any party or parties executing the same immediately upon the execution of same by the party or parties; where such instrument has been prepared by the broker or his salesman and relates to the employment of the broker as agent or pertains to consummation of the leasing, purchase, sale or exchange of real property in which he may participate as broker or salesman, the broker shall retain a copy of same in his office for future use or inspection. It is the responsibility of the broker or salesman to prepare sufficient copies of such instruments in order that the above may be accomplished. Nothing herein shall be construed to permit the broker or salesman to withhold such delivery in order to obtain other signatures on such instruments. Each listing agreement shall fully set forth its terms and have a definite expiration date. It shall not contain any provision requiring the seller to notify the broker of his intention to cancel, but shall be deemed to cancel as of the expiration date shown therein.

Taken together, it seems to us that the public policy of this State is that brokers, in order to collect a commission, must have a written listing, that the listing must contain a definite expiration date, and the listing agreement shall be deemed to cancel automatically on that date.[2] The only exception being that described in *Mohamed v. Robbins, supra.* This conclusion is inescapable in light of the extensive statutory qualifications required of licensees (A.R.S. § 32–2124), and article 26, § 1 of the Arizona Constitution which authorizes brokers and salesmen to engage in limited law practice involving real property transactions. If a broker can practice law in the area of real property sales, it is reasonable to hold him to a full understanding of the implications and ramifications of the Statute of Frauds.

For the foregoing reasons, the judgment in favor of the appellees as to their claim for a commission is reversed. Having decided that appellees are not entitled to a commission, other issues raised by appellants need not be considered.

Judgment reversed, and case remanded for entry of judgment in favor of appellant.

WREN, Acting P. J., and FROEB, C. J., concur.

---

**1.** 18 Ariz.App. at 371, 502 P.2d at 172.

**2.** Restatement (Second) of Agency § 446 (1958) is in accord:

§ 446. Compensation Dependent upon Specified Result in Limited Time

An agent whose compensation is conditional upon his performance of specified services or his accomplishment of a specified result within a specified time is not entitled to the agreed compensation unless he renders the services or achieves the result within such time, unless the principal, in bad faith, has prevented him from doing so.

No question of bad faith has been raised in these proceedings.

**526**

NEALE & ASSOCIATES
REAL ESTATE AND DEVELOPMENT

---

PHONE: (602) 955-6432 * 4724 NORTH 35th WAY * PHOENIX, ARIZONA
85018

May 31, 1967

Mr. Gilbert E. Olson
110 Mountain Shadows West
Scottsdale, Arizona

Dear Mr. Olson:

Our listing on Mountain Shadows of Colorado expires as of
today. I am taking the liberty of typing that last listing
in the context of this letter and your extension of that
listing will be approved by you when you attach your signa-
ture below.

> "I hereby give you an open, non-exclusive
> listing to sell the Olson Ranch, known as
> Mountain Shadows of Colorado located at
> Rustic, Colorado.
>
> The price on this ranch is one million one
> hundred eighty-five thousand dollars,
> ($1,185,000.00)
>
> Broker's commission is fixed at 5% (Five
> Per Cent) of the purchase price, to be
> paid as the land is released and paid for.
>
> Participation of any other broker is to be
> the responsibility of NEALE & ASSOCIATES,
> when they are successful in creating said
> sale.
>
> This agreement and listing is valid until
> November 1, 1967."

Very truly yours,

William G. Neale
NEALE & ASSOCIATES
Phoenix, Arizona                ACCEPTED: Gilbert E. Olson /s/

                                Gilbert E. Olson

MORTGAGES AND INVESTMENTS - BROKER AND AGENT